**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PHILLIP R. WASSERMAN,

            Plaintiff,

-vs-                                   Case No. 8:05-cv-1898-T-24TBM

TRIAD SECURITIES CORP. and
NASD DISPUTE RESOLUTION, INC.,

            Defendants.
_____/

## O R D E R

This cause comes before the Court for consideration of Plaintiff's Motion for Preliminary Injunction (Doc. No. 12) and Defendant's Motion to Compel Arbitration (Doc. No. 15).

### I. Background

In 2004, Phillip R. Wasserman ("Wasserman") opened with Triad Securities Corporation ("Triad") a non-discretionary margin account (the "Account") in the name of The Phillip Roy Fund, L.P. ("Phillip Roy Fund"). In opening and conducting trading in the Account, Wasserman signed four separate agreements (collectively, the "Agreements"). Each of the Agreements contains an arbitration clause requiring any dispute arising out of or in connection with the Account to be arbitrated. On September 23, 2004, Wasserman signed the End User Agreement with Triad. It permitted Wasserman to execute trades electronically in the name of the Phillip Roy Fund. Wasserman signed the End User Agreement with reference to his title as "G.P." On November 23, 2004, Wasserman signed an Option Agreement and Approval Form with the clearing broker Pershing LLC ("Pershing") with respect to the Account (the "Option Agreement"). Wasserman signed the Option Agreement in the space for "Account Owner's Signature" as well as in the space

for "Signature of General Partner or Trustee." On December 27, 2004, Wasserman signed a Margin Agreement with Pershing with respect to the Account (the "Margin Agreement"). Wasserman signed the Margin Agreement noting his title as "G.P." At the same time, Wasserman signed the Margin Agreement, Wasserman also signed a "New Account" Agreement provided by Pershing with respect to the Account (the "New Account Agreement"). Wasserman signed the New Account Agreement as the "primary account holder" without designating his corporate capacity.

In mid-June 2005, Wasserman bought 1,844 Google call option contracts, which gave him the right to buy 184,400 shares of Google at a strike price of $280 (the "Google Options"), and 634 Sears call option contracts, which gave him the right to buy 63,400 shares of Sears at a strike price of $150 (the "Sears Options")(the Google Options and Sears Options are referred to collectively as the "Options"). The Options had an expiration date of Saturday, June 18, 2005.

On Friday, June 17, 2005, the final market closing prices of both Google and Sears stock exceeded the strike prices of the Options. Under the rules of The Options Clearing Corporation, the Options were automatically exercised as being in the money by 25 cents. As a result, Wasserman owned 184,400 shares of Google and 63,400 shares of Sears in the Account for which payment had to be made.

On Monday, June 20, 2005, the Account had insufficient equity to comply with its margin obligations. Consequently, the Google and Sears shares were sold with a resulting loss of $1,236,723 (the "Trading Losses"). Wasserman refused to pay the Trading Losses.

After Triad paid the Trading Losses to Pershing, as required under its clearing agreement with Pershing, Triad commenced arbitration on August 9, 2005 against Wasserman and The Phillip

Roy Fund, L.P. before the NASD in accordance with the arbitration provision in the End User Agreement, the Option Agreement, the Margin Agreement, and the New Account Agreement.

On September 26, 2005, Wasserman filed an action in a Florida state court seeking to enjoin Triad's NASD arbitration against him. On October 12, 2005, Triad removed the action to this Court. Plaintiff asserts that he has never entered into an agreement in his individual capacity to arbitrate the dispute that is the subject matter of the arbitration proceeding. Plaintiff argues that he signed the Agreements in a corporate capacity and not in an individual capacity. On the contrary, Triad contends that Plaintiff is obligated by the Agreements to arbitrate the dispute in his individual capacity.

## II. Discussion

It is well established that the question of arbitrability is an issue for judicial determination. AT&T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 649 (1986). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." Id.

Arbitration provisions are contractual in nature, and thus, construction of such provisions is a matter of contract interpretation. Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla. 1999)(citing Seaboard Coast Line R.R. v. Trailer Train Co., 690 F.2d 1343, 1352 (11th Cir. 1982)). When one's right to action in the courts is restricted by an arbitration agreement, the contract should be read narrowly, not expansively construed. U-Can-II, Inc. v. Setzer, 870 So.2d 99, 102 (Fla. 1st DCA 2003)(J. Ervin, concurring). An interpretation of an arbitration provision then must rest on the intent of the parties. Seaboard, 690 F.2d at 1348. The Federal Arbitration Act favors arbitration. Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000); Blinco v. Green Tree

Servicing LLC, 400 F.3d 1308, 1311 (11th Cir. 2005). However, this policy "cannot serve to stretch a contract beyond the scope originally intended by the parties." Seaboard, 690 F.2d at 1352. In other words, arbitration is a matter of contract and a party cannot be required to submit to arbitration a dispute in which he has not agreed to so submit. AT&T Technologies, 475 U.S. at 648; Volt Info. Sci., Inc. v. Board of Tr. of Leland Stanford Jr. Univ., 489 U.S. 468, 478 (1989).

"[I]t is settled beyond peradventure that a person signing a contract only in a corporate capacity, and unambiguously indicating that fact on the face of the contract documents, does not thereby become a party to the agreement." McCarthy v. Azure, 22 F.3d 351, 356 (1st Cir. 1994). So the question before the Court is whether or not the four agreements signed by Wasserman were signed in a corporate capacity and/or an individual capacity.

It is clear that Wasserman signed the End User Agreement and the Margin Agreement in his corporate capacity. In addition to the corporate designation of "G.P." listed as his title on both agreements, the name of the company/entity listed on each contract is "Phillip Roy Fund." Nothing on the face of these two contracts creates any ambiguity. Instead, each contract unambiguously shows that the parties intended to bind Wasserman only in his corporate capacity.

Next, the Court considers the Option Agreement and the New Account Agreement. Wasserman signed the Option Agreement in the space for "Account Owner's Signature" as well as in the space for "Signature of General Partner or Trustee," and he signed the New Account Agreement as the "primary account holder" without designating his corporate capacity. The fact that Wasserman failed to indicate his corporate capacity is not, however, conclusive as to whether the parties intended to bind Wasserman in his individual capacity. See, e.g., The Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 316-17 (6th Cir. 1998). The account title for each contract was

"Phillip Roy Fund" and each contains the same account number as that listed on the Margin Agreement. In addition, in the second section on the Option Agreement, Wasserman checked a box titled "employed by," listed Phillip Roy Fund, and indicated his position with the Phillip Roy Fund as "G.P." On the New Account Agreement, the section titled "account registration" allows the registrant to indicate the type of account. Wasserman checked "partnership" and "financial organization" and did not check the box titled "individual." Under "participant information," "Phillip Roy Fund" is listed as the participant and is indicated by checked boxes to be an entity and not a person. Finally, Phillip Wasserman as an individual has never been a customer of Triad. Based on these facts, the Court finds that it is clear that Triad knew that it was dealing with the Phillip Roy Fund as an entity and not with Phillip Wasserman as an individual. Accordingly, the Court finds that Wasserman, in his individual capacity, never entered into an agreement to arbitrate the dispute that is the subject matter of the arbitration proceeding initiated by Triad and cannot, therefore, be compelled to participate in the arbitration in his individual capacity.

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Plaintiff's Motion for Preliminary Injunction (Doc. No. 12) is **GRANTED** to the extent that Wasserman, in his individual capacity, cannot be compelled to participate in the NASD arbitration styled <u>Triad Securities Corp. v. The Phillip Roy Fund, L.P. and Phillip R. Wasserman</u>, NASD Case No. 05-04197.

(2) Defendant's Motion to Compel Arbitration (Doc. No. 15) is **DENIED**.

(3) The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant enjoining Defendant from arbitrating its claims against Plaintiff in his individual

      capacity before the NASD as set forth in <u>Triad Securities Corp. v. The Phillip Roy Fund, L.P. and Phillip R. Wasserman</u>, NASD Case No. 05-04197.

(4)    The Clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 12th day of June, 2006.

*[signature]*
SUSAN C. BUCKLEW
United States District Judge